Filed 7/1/24  P. v. Ituarte CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080795 |
| v. | (Super. Ct. No. FWV025155) |
| JORGE DAVID ITUARTE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Camber, Judge.  Reversed and remanded with directions.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

Defendant and appellant Jorge David Ituarte appeals the trial court's order summarily denying his Penal Code[1] section 1172.6 (formerly section 1170.95)[2] petition to recall his murder (§ 187, subd. (a)) conviction and for resentencing. On appeal, defendant contends the trial court erred in summarily denying his petition without issuing an order to show cause and holding an evidentiary hearing because the court's findings were either contrary to the record or based upon an improper application of the law. He also asserts his appointed counsel rendered ineffective assistance by failing to object to the trial court's findings. He requests the matter be remanded for further proceedings. The People agree the matter should be remanded for an evidentiary hearing because the record of conviction does not establish defendant was ineligible for resentencing as a matter of law. We agree with the parties and remand the case with directions for the superior court to vacate its order denying the petition, issue an order to show cause and conduct further proceedings in accordance with section 1172.6, subdivision (d).

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Carlos Yuman owns a used car dealership located in Los Angeles County. On April 22, 2002, Yuman was meeting with two customers, Allen and Kathleen Salas, in an

---

[1] Unless otherwise specified, all future statutory references are to the Penal Code.

*[footnote continued on next page]*

2

office at the dealership. Juan Mingucha, an employee, was waiting outside. Defendant and his codefendant Carlos Aramburo approached the office, pushed Mingucha into the office, and entered. Codefendant Aramburo pulled a semiautomatic gun from his waistband, cocked it, and pointed it at Mingucha. While defendant rummaged through a desk and knocked things over, Aramburo demanded money from the Salases and told defendant to get Yuman's wallet, which he did. Yuman and the Salases each turned over money to the defendants. Aramburo demanded money from Mingucha, but he had no money. Defendants also took two briefcases from the office and a watch from Yuman.

Two days later, defendants approached Maria Ester Espinoza DeMoreno and Enrique Orosco in the parking lot of a Smart & Final store in San Bernardino County. DeMoreno and Orosco were placing groceries into their Dodge Durango. Aramburo demanded the keys to the Durango. When Orosco did not turn over the keys immediately, Aramburo pulled a semiautomatic gun from his waistband and told Orosco, "I'm going to shoot you." DeMoreno gave the keys to Aramburo, who passed them to defendant. Defendant got into the driver's seat and began to drive away. Aramburo caught up with defendant in the parking lot and got into the passenger seat. Defendant then drove away. The incident was promptly reported to a 911 operator.

---

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6 (Stats. 2022, ch. 58, § 10), without substantive changes to the statute's content. We hereafter cite to section 1172.6 for ease of reference.

[3] The factual background is taken from this court's prior nonpublished opinion in defendant's prior direct appeal, case No. E035609. (*People v. Ituarte* (May 5, 2005, E035609) [nonpub. opn.] (*Ituarte I*).)

3

Shortly afterward, Ontario Police Officer James Trousas, who was driving in a marked police car, spotted the Durango and a chase ensued. Defendant drove the Durango through a red light onto a freeway, where he reached speeds up to 100 miles per hour while swerving through traffic. Leaving the freeway, he entered an intersection against a red light and collided with a red pickup truck. Lindy Garcia, a passenger in the truck, died approximately 17 hours later as a result of injuries from the collision.

Aramburo was apprehended and taken into custody at the scene of the collision. Defendant ran from the scene but was apprehended a short distance away by a police officer. While handcuffed, defendant resisted efforts by officers to place him in a police car.

During a search of the Durango, police found a semiautomatic gun and some of DeMoreno's jewelry in the seat of the car. Prior to defendants' taking of the Durango, the jewelry had been inside two bags in the glove compartment. Other jewelry belonging to DeMoreno, which had been in the car, was found in each of the defendants' pockets. Yuman's watch and a traffic citation that had been in one of Yuman's briefcases were also found on Aramburo after his arrest. Aramburo admitted the carjacking, possession of the gun, taking the jewelry, stealing the traffic citation, and being in the Durango.

Separate juries found defendants Ituarte and Aramburo guilty of murder (§ 187, subd. (a); count 1), carjacking (§ 215, subd. (a); count 2), criminal threats (§ 422; count 6), evading a police officer causing death (Veh. Code, § 2800.3; count 7), attempted robbery (§§ 664/211; count 12), four counts of robbery (§ 211; counts 3 & 9-11), and six

4

counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 4, 5, & 13-16). Defendant was also convicted of resisting an officer (§ 69; count 8). In addition, with respect to the carjacking, robbery, attempted robbery, assault, and criminal threat counts against defendant, the jury found true the enhancement allegations that a principal was armed with a firearm (§ 12022, subd. (a)(1)).[4] Defendant was sentenced to an indeterminate term of 25 years to life on count 1 (murder) and aggregate determinate term of 24 years, eight months on the remaining counts, to be served consecutive to the indeterminate term.

Defendant subsequently appealed. And on direct appeal, we affirmed the convictions but remanded to the trial court with directions to recalculate the determinate sentence. (*Ituarte I*, *supra*, E035609.) On remand, defendant's determinate sentence was reduced to 20 years, eight months.

On October 20, 2022, defendant in pro per filed a petition for resentencing pursuant to section 1172.6. Quoting from the prosecutor's closing argument, defendant noted that he was prosecuted under a theory of aiding and abetting a felony murder. He also cited the jury instruction given on murder as a natural and probable consequence of aiding and abetting carjacking or robbery. He cited to where the jury was instructed on an aider and abettor to a felony murder, and an aider and abettor to crimes that were the natural and probable consequences of any other crime committed by a principal.

---

[4] With respect to the carjacking, robbery, and attempted robbery counts against Aramburo, the jury found true the enhancement allegations that he personally used a firearm (§§ 12022.53, subd. (b), 12022.5, subd. (a)(1)). (*Ituarte I*, *supra*, E035609.)

Defendant declared that (1) an information was filed against him in 2002 that allowed the People to proceed to prosecute him for murder under a felony murder or natural and probable consequence theory of accomplice liability; (2) after trial, he was convicted of murder in 2004 under a felony murder or natural and probable consequence theory of accomplice liability; (3) he could not now be convicted of murder because of changes made to sections 188 and 189, effective and retroactive, as of January 1, 2019 and January 1, 2022; and (4) he was not the actual killer; he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer; the People did not allege nor was he found to be a major participant who acted with reckless indifference to human life during the course of a crime; and the victim of the murder was not a peace officer acting in the performance of his or her duties.

After the trial court appointed counsel for defendant, on February 28, 2023, the People filed a reply to defendant's section 1172.6 petition. The People argued defendant's petition should be summarily denied because (1) he was the actual killer, (2) he was a major participant in the underlying felony, and (3) he acted with reckless indifference to human life. Defendant's appointed counsel did not file any additional briefing or submit any evidence.

A hearing was held on March 1, 2023. At that time, the People and defendant's appointed counsel submitted on the briefing. The trial court noted that it had reviewed the record of conviction, the petition, and the points and authorities in defendant's petition. Based upon this review, the court denied the petition. The court explained,

6

"The petitioner has failed to make a prima facie showing that he is entitled for relief. The petition is denied. The finding is based on the following: [¶] The defendant was not convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on the person's participation in the crime. [¶] In this case, he was the actual killer based on the fact that he was operating the vehicle, and he was found guilty of that. In addition, special circumstances were also found to be true. [¶] And the Court noted that there was a case that came out -- I think it was this week. It's in the Daily Journal. It's *People v. Lopez* -- it looks like -- I wish this print was bigger -- which talked about the fact that somebody who's found -- special circumstances are found against, makes them ineligible for relief. [¶] So I can get you the cite, if I can read it. I'll show you what I have, but based on that, the Court's going to deny the petition." Defendant timely appealed.

III.

DISCUSSION

Defendant contends the trial court's order denying his section 1172.6 petition for resentencing without issuing an order to show cause and conducting an evidentiary hearing should be reversed because the three reasons given by the court in finding him ineligible for resentencing as a matter of law "either did not exist or were not based upon a valid application of the law." Defendant also argues his appointed counsel provided ineffective assistance of counsel by failing to object to the trial court's improper findings.

7

The People agree the trial court erred in denying defendant's petition at the prima facie stage. They note the court's finding regarding special circumstances was contrary to the record, and although the information did not allege theories of felony murder, the jury instructions and the prosecutor's comments during closing arguments show that defendant was tried under a theory of felony murder. The People also point out that because defendant's jury was instructed on felony murder under a theory of aiding and abetting, the record of conviction did not establish, as a matter of law, that defendant was the actual killer. They thus assert that defendant made a prima facie showing under section 1172.6 and that the matter should be remanded to the trial court with instructions to issue an order to show cause and conduct an evidentiary hearing. We also agree, and reverse the trial court's order summarily denying defendant's section 1172.6 petition and remand the matter for further proceedings.[5]

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowed the felony murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952,

---

[5] Because we find the trial court erred in summarily denying defendant's section 1172.6 petition at the prima facie stage, we need not address defendant's ineffective assistance of counsel claim.

8

957 (*Lewis*).) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony murder rule in section 189, subdivision (e). The latter provision requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); that the defendant, though not the actual killer, with the intent to kill commanded or assisted in the commission of the murder (§ 189, subd. (e)(2)); or that the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of [s]ection 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)). (See *Curiel*, *supra*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *People v. Strong*, *supra*, at p. 708; *People v. Cody* (2023) 92 Cal.App.5th 87, 105.)

The Legislature also added section 1172.6 (former section 1170.95) to the Penal Code, creating "a procedural mechanism for those convicted of murder under prior law to seek retroactive relief." (*People v. Wilson*, *supra*, 14 Cal.5th at p. 869; see *Curiel*, *supra*, 15 Cal.5th at p. 449; *Lewis*, *supra*, 11 Cal.5th at p. 957; see Stats. 2018, ch. 1015.) As amended by Senate Bill No. 775, section 1172.6, subdivision (a) provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced

9

the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts." (See *People v. Strong*, *supra*, 13 Cal.5th at p. 798; *Lewis*, *supra*, 11 Cal.5th at p. 957.)

An offender must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)-(3); see also *id*., subd. (b)(1)(A).) Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (*Id*., subd. (b)(1)(C).)

If a section 1172.6 petition contains all the required information, the superior court must appoint counsel to represent the petitioner if requested. (§ 1172.6, subd. (b)(1)(A), (b)(3); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.) The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that he or she is

entitled to relief.  (§ 1172.6, subd. (c).)  If such a showing is made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c), (d)(1).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, ""'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'"  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, at p. 971; see *Curiel*, *supra*, 15 Cal.5th at pp. 463-464.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, at p. 972; see *People v. Harden* (2022) 81 Cal.App.5th 45, 51 (*Harden*).)  An appellate opinion is generally part of the record of conviction, and may be considered at the prima facie stage, provided that the court does not engage in factfinding based on the prior opinion.  (*Lewis*, *supra*, at p. 972 ["the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers'"]; *People v. Langi* (2022) 73 Cal.App.5th 972, 979 ["[A]lthough an appellate opinion affirming a conviction may be

11

considered in determining whether a prima facie showing has been made under section [1172.6], on prima facie review such an opinion may not be conclusive"].)  The record of conviction may also include admissible trial evidence (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1063), the trial court's instructions to the jurors (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1084), and the parties' closing arguments (*People v. White* (2014) 223 Cal.App.4th 512, 525).

The superior court "may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*.  '"[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,'"' thereby deeming the petitioner ineligible." (*Harden*, *supra*, 81 Cal.App.5th at p. 52; see *Curiel*, *supra*, 15 Cal.5th at p. 460; *Lewis*, *supra*, 11 Cal.5th at p. 971.)  "For example, if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law." (*Harden*, *supra*, at p. 52.)  Or, where "the record of conviction irrefutably establishes as a matter of law that the jury determined [the petitioner] was the actual killer," the trial court may properly deny the petition "at the prima facie stage." (*Id*. at pp. 56, 60; see § 189, subd. (e)(1).)

12

We independently review whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c). (*Harden*, *supra*, 81 Cal.App.5th at p. 52; *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.) A denial at this stage is appropriate if the record of conviction demonstrates the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 960; see *People v. Lopez* (2022) 78 Cal.App.5th 1, 14 [denial at the prima facie stage """"is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law,'""" which """"is a purely legal conclusion . . . we review de novo""""].)

In the present matter, defendant alleged all the requirements under section 1172.6, subdivision (a), to be eligible for relief: that a complaint, information, or indictment allowed the prosecution to proceed under a theory of felony murder (or other now-invalid theory), that he was convicted of murder, and that he could not now be convicted of murder based on the changes the Legislature made to sections 188 and 189. (See § 1172.6, subd. (a)(1)-(3).) As discussed, we must accept these allegations as true, unless the record of conviction contains facts that refute the allegations. (See *Curiel*, *supra*, 11 Cal.5th at p. 460; *Lewis*, *supra*, 11 Cal.5th at p. 971.) We agree with the parties that the record of conviction does not refute the allegations in defendant's section 1172.6 petition.

The record of conviction did not establish, as a matter of law, that defendant was the actual killer or that "'with the intent to kill, [he] aided, abetted, . . . or assisted the actual killer in the commission of murder in the first degree.'" (*People v. Lopez* (2023) 88 Cal.App.5th 566, 576.) Rather, the trial court instructed the jury on theories of felony

13

murder and aiding and abetting as to both defendants.  Specifically, as to defendant

Ituarte, the court gave the following instruction regarding felony murder:  "Defendant is

accused in [c]ount I of having committed the crime of murder in violation of . . . [s]ection

187.  Every person who unlawfully kills a human being during the commission or

attempted commission of a carjacking enumerated in [c]ount II or robbery enumerated in

[c]ount III, is a felony inherently dangerous to human life is guilty of the crime of murder

in violation of . . . [s]ection 187.  [¶]  In order to prove this crime, each of the following

elements must be proved.  Number 1, a human being was killed; number 2, the killing

was unlawful; and, number 3, the killing was done or occurred during the commission or

attempted commission of a carjacking or robbery and a felony inherently dangerous to

human life and carjacking or robbery is a felony inherently dangerous to human life by

definition.

The trial court also instructed the jury as to aiding and abetting as follows:  "One

who aids and abets another in the commission of a crime or crimes is not only guilty of

that crime or crimes, but is also guilty of any other crime committed by a principal which

is natural – which is a natural and probable consequence of the crimes originally aided

and abetted.  In order to find the defendant guilty of the crimes charged in [c]ounts I, II,

III, IV, V, VI, VII, IX, X, XI, XII, XIII, XIV, XV, XVI you must be satisfied beyond a

reasonable doubt that the crimes were committed; number 2, that the defendant aided and

abetted in those crimes; number 3, that a coprincipal in that crime committed the crimes,

and, 4, that the crimes were a natural and probable consequence of the commission of the

14

crimes enumerated in the previous [c]ounts I through VI, VII, IX through XIII, and XIV through XVI.

The court further instructed defendant's jury as follows: "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of carjacking or robbery, all persons who either directly and actively committed the act constituting the crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing was intentional, unintentional, or accidental. [¶] In order to be guilty of murder as an aider and abettor to a felony murder, the accused and the killer must have been jointly engaged in the commission of the carjacking or robbery at the time the death occurred. However, an aider and abettor may still be jointly responsible for the commission of the underlying carjacking or robbery based upon other principles of law which will be given to you."

The jury instructions given to defendant's jury informed them that they could find defendant either guilty of first degree murder if it found he aided and abetted his codefendant in the carjacking or the robbery that resulted in the fatal collision. The trial court thus incorrectly concluded defendant was the "actual killer." Because the jury was given the felony murder aider and abettor instruction, it is possible that the jury found defendant guilty of first degree murder based on a theory of imputed malice. (See *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1267 [although the jury was not required to

15

do so, the jury "could have reasonably construed the instructions in a manner permitting it to convict appellant under a theory of imputed malice"].)  Moreover, contrary to the trial court's finding, the jury here did not find true any special circumstance allegation that established defendant's intent to kill or specified the theory under which he was convicted.  (See *People v. Lopez*, *supra*, 88 Cal.App.5th at p. 572 [because the jury found true a prior-murder special circumstances allegation, the record of conviction established the defendant's guilt under the current felony-murder rule].)

In sum, defendant alleged sufficient facts to establish a prima facie case for relief, and the record of conviction did not conclusively refute those facts.  Though the evidence at trial showed defendant was the operator of the vehicle that caused the fatal collision, the superior court cannot consider that evidence at the prima facie stage to show defendant was the actual killer or acted with the intent to kill and "'should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  The trial court erred in failing to issue an order to show cause and setting the matter for an evidentiary hearing under section 1172.6, subdivision (d).  (See *People v. Lopez*, *supra*, 78 Cal.App.5th at p. 20; *People v. Flint* (2022) 75 Cal.App.5th 607, 613; *People v. Ervin* (2021) 72 Cal.App.5th 90, 104.)

## IV.

## DISPOSITION

The order denying defendant's section 1172.6 petition for resentencing is reversed. The superior court is directed to issue an order to show cause and conduct an evidentiary hearing under section 1172.6, subdivision (d).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

RAPHAEL

J.

17